FILED
JUN 0 5 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 07 CR 314 |
| | ) | |
| v. | ) | Judge Darrah |
| | ) | **Superseding Information** |
| AIDAN E. MONAHAN and | ) | Violation: Title 18, United States |
| ROLAND HARPER | ) | Code, Sections 1341 and 2 |

JUDGE JOHN W DARRAH

MAGISTRATE JUDGE ASHMAN

The United States Attorney alleges:

1. At times material to this superseding information:

### Relevant Persons and Entities

a. Monahan Landscape Company, Incorporated ("Monahan Landscape") was a landscape, construction and maintenance company located in Arlington Heights, Illinois.

b. Defendant AIDAN E. MONAHAN was the President of Monahan Landscape Company.

c. Rohar Construction ("Rohar") was a trucking company based in Chicago, Algonquin and Arlington Heights, Illinois.

d. Defendant ROLAND HARPER was the President of Rohar.

e. The Chicago Public Schools ("CPS"), the third largest school district in the nation, was responsible for operating elementary schools and high schools in Chicago. CPS purchased a wide variety of commodities essential for the day-to-day operation of the

school system. It also managed construction-related projects pertaining to its physical facilities.

f.  The Chicago Board of Education (the "Board") was comprised of seven members appointed by the Mayor of Chicago. It was responsible for overseeing the operations of CPS.

### CPS Remedial Plan and Sheltered Market Program

g.  In 1991, the CPS adopted a "Remedial Plan" which was designed to assist business enterprises owned by minorities and women and to provide for the participation of such enterprises in the CPS's procurement of goods and services. The Remedial Plan defined a Minority Business Enterprise ("MBE") as a business that is "owned and controlled by a Minority person or persons and that has its principal place of business within the six-county Chicago Metropolitan Statistical Area." An MBE was further defined as a business awarded certification by the City of Chicago as a minority owned and controlled business, authorized to perform in its Certified Area of Specialty. The Remedial Plan also defined a WBE, or Woman's Business Enterprise.

h.  The CPS assigned landscaping work by six geographical regions (Regions One through Six) and one city-wide region for campus parks and athletic fields. In 2002, the CPS decided to solicit bids for landscaping maintenance services in two separate bid solicitations, an "open market" solicitation and a "sheltered market" solicitation available only to MBEs or WBEs.

i. In or about February 2003, the Board issued a request for bids for the Sheltered Market Landscape Maintenance Work Solicitation ("2003 Sheltered Market Solicitation"). Under the terms of the solicitation, the vendor was required to provide landscape maintenance services at those schools located in Regions Two, Three and Four that had 20,000 square feet of green space or more. Landscape maintenance services were to include cutting grass, pruning trees and shrubs, cultivating beds, fertilizing, and weed and insect control as needed.

j. The 2003 Sheltered Market Solicitation specified that only firms certified by the City of Chicago's Certification Program (i.e., a business awarded certification by the City of Chicago as a minority or woman owned and controlled business, authorized to perform in its Certified Area of Specialty) would be considered for award of the contract. The 2003 Sheltered Market Solicitation required bidders to submit a letter from the City of Chicago certifying the bidder as an MBE or WBE in good standing.

k. The 2003 Sheltered Market Solicitation required that the bidder adhere to a minimum requirement that at least 50% of the dollar amount of each job be performed by the "Prime Contractor" (the MBE or WBE that was awarded the contract). An additional 25% was to be performed by MBEs and/or WBEs, giving an overall MBE and/or WBE participation of 75%. The remaining 25% of the contract could be subcontracted to businesses that were not certified as MBEs or WBEs. The 2003 Sheltered Market Solicitation required bidders to submit, among other documents, a "compliance demonstration" setting forth the

manner in which the bidder would comply with the solicitation requirements. Pursuant to the terms of the solicitation, bidders were evaluated on various criteria, including compliance with the MBE/WBE goals set forth in the solicitation, the quality of the proposed MBE/WBE Plan, and submission of all of required completed documents.

l. According to the Remedial Plan, to be eligible for participation credit, an MBE was required to be an independent business serving a commercially independent function. The Remedial Plan defined a "commercially independent function" to mean that the MBE must execute a distinct element of work by actual performance, management and supervision. The Remedial Plan further required that the bidder not be a "pass-through" for firms not certified as an MBE or WBE.

### Monahan Landscape Company

m. From on or about April 1, 2000, through March 31, 2003, Monahan Landscape was the primary contractor on the landscape maintenance contracts with CPS for all six regions. In addition to contracts for landscape maintenance, Monahan Landscape also had contracts with CPS for new landscaping and playlot maintenance. Between April 2000 and March 31, 2003, the CPS paid Monahan Landscape over $8.5 million for work performed pursuant to the contracts for landscape maintenance for all six regions.

n. Monahan Landscape was not an MBE or WBE. As such, Monahan Landscape was not eligible to submit a bid in response to the 2003 Sheltered Market Solicitation for landscape maintenance to be performed at Regions Two, Three and Four.

### Rohar's Bid

o.  Rohar was first certified by the City of Chicago as an MBE in 1994. As part of Rohar's application to be certified as an MBE, defendant ROLAND HARPER stated that he was responsible for day-to-day management decisions and business decisions. Defendant ROLAND HARPER represented in the certification declaration affidavit that he was responsible for financing decisions, including signing checks, signing and co-signing for loans, surety bonding, major purchases or acquisitions, acquisitions of lines of credit, and signing contracts. Defendant ROLAND HARPER further represented that he was responsible for management decisions such as estimating, marketing and sales operations, hiring and firing of management personnel, hiring and firing of non-management personnel, supervision of field/production, and supervision of office personnel.

p.  As a certified MBE, Rohar was eligible to submit a bid in response to the 2003 Sheltered Market Solicitation.

### Awarding of Sheltered Market Contract

q.  On or about February 28, 2003, Rohar, by its president, defendant ROLAND HARPER, submitted a bid proposal to the Board to perform landscaping maintenance services for Regions Two, Three and Four pursuant to the 2003 Sheltered Market Solicitation. According to the proposal submitted by Rohar, Rohar would use two subcontractors, Monahan Landscape and Company B, an MBE. Pursuant to the bid

requirements, Monahan Landscape Company was limited to performing no more than 25% of the landscape maintenance contract work.

  r. On or about March 26, 2003, Rohar was awarded the Sheltered Market Contract for Regions Two, Three and Four. The contract period was from April 1, 2003, through March 31, 2004, with the Board having two options to extend the agreement for additional one-year periods. On March 24, 2004, the Board exercised its option to extend the agreement for a term commencing on April 1, 2004 and ending on March 31, 2005. The Board subsequently amended the term of the option period to end on November 30, 2005.

  s. During the time period beginning in April 2003 and continuing until approximately September 18, 2006, Rohar received more than $1.5 million from the CPS for landscape maintenance services performed as a prime contractor pursuant to the Sheltered Market Contract. Although the Sheltered Market Contract ended on November 30, 2005, invoices for work performed pursuant to the contract were submitted to the CPS after the date on which the contract terminated, and the CPS continued to make payments to Rohar through on or about September 18, 2006.

  2. Beginning no later than February 2003, and continuing until in or about September 2006, in Chicago and elsewhere within the Northern District of Illinois, Eastern Division,

      AIDAN E. MONAHAN and
      ROLAND HARPER,

defendants herein, together with others known and unknown, devised, intended to devise and participated in a scheme and artifice to defraud and to obtain money and property, including MBE contracts calling for payments in excess of $1.5 million, as well as funds actually paid pursuant to those contracts, from the Chicago Public Schools, by means of materially false and fraudulent pretenses, representations and promises, and material omissions, which scheme is further described below.

### Summary of Scheme

3. It was part of the scheme that defendants AIDAN MONAHAN and ROLAND HARPER falsely represented in contract bid documents submitted to the Chicago Public Schools by Rohar that Rohar was a Minority Business Enterprise that was controlled, managed and operated by a minority person when, in fact, Rohar acted (and was intended by MONAHAN to act) as a "pass-through" for Monahan Landscape. Rohar did not, in fact, perform a commercially independent function under the Sheltered Market Contract, nor did Rohar itself perform at least 50% of the work. Instead, Monahan Landscape, which was not certified as an MBE, was actually operating Rohar with respect to the Sheltered Market Contract. As a result of the fraudulent scheme, defendant obtained in excess of $1.5 million from the Chicago Public Schools.

### Scheme to Defraud

4. It was further part of the scheme that defendant AIDAN MONAHAN caused employees of Monahan Landscape to prepare fraudulent bid documents to be submitted to

the Board on behalf of Rohar, knowing that Rohar did not have the capacity to perform a commercially independent function as an MBE and could not perform the work of the Sheltered Market Contracts as an MBE within the requirements of the CPS. The employees prepared the bid documents at MONAHAN'S direction. MONAHAN, and not defendant ROLAND HARPER, provided the employees with the cost estimations to complete the bids on behalf of Rohar.

5.  It was further part of the scheme that defendant AIDAN MONAHAN caused employees, employed by and paid by Monahan Landscape, to sign off on Rohar maintenance logs submitted to the Board. These employees were not identified on Rohar payrolls, but were instead identified on Monahan Landscape payrolls.

6.  It was further part of the scheme that defendant AIDAN MONAHAN directed and caused Monahan Landscape employees to perform administrative functions on behalf of Rohar, including preparing invoices submitted to the Board, communicating with Rohar's business contacts, handling correspondence, issuing Rohar payroll checks and reconciling Rohar bank accounts.

7.  It was further part of the scheme that defendants AIDAN MONAHAN and ROLAND HARPER knowingly caused the submission of false statements to an agent of the Chicago Public Schools to conceal the fact that Rohar was acting as a pass-through on behalf of Monahan Landscape. At the direction of defendant AIDAN MONAHAN, an employee of Monahan Landscape prepared invoices on behalf of Rohar, along with the necessary

supporting documentation. The documentation included certifications that contract requirements, including the MBE requirements, were met. After preparing the invoices, the employee contacted defendant ROLAND HARPER to sign the invoices and the attachments. They were then submitted for payment to an agent of the Chicago Public Schools.

9. It was further part of the scheme that defendant ROLAND HARPER brought mail and other correspondence related to the Sheltered Market Contract to the offices of Monahan Landscape for handling. Defendant HARPER gave the mail addressed to Rohar to bookkeepers employed by Monahan Landscape for handling.

10. It was further part of the scheme that defendant AIDAN MONAHAN exercised control over Rohar's bank account in that MONAHAN authorized the transfer of funds into Rohar's account and signed off on checks issued from Rohar's account even though MONAHAN was not a signatory on Rohar's account. In addition, an employee of Monahan Landscape reconciled bank statements and prepared checks to be issued from Rohar's checking account at MONAHAN's direction.

11. It was further part of the scheme that defendant AIDAN MONAHAN caused checks to be issued from Rohar's bank account to pay vendors doing business with Monahan Landscape.

12. It was further part of the scheme that Monahan Landscape, at the direction of defendant MONAHAN, performed most of the work using its own equipment and employees, but pretending to be acting as Rohar,

13. It was further part of the scheme that defendant MONAHAN obtained control of in excess of $1.5 million in payments from CPS though this scheme.

14. It was further part of the scheme that defendants MONAHAN and HARPER, acting with others known and unknown, misrepresented, concealed and hid, and caused to be misrepresented, concealed and hidden, the purposes of and acts done in furtherance of the scheme. These acts were taken with the purpose to deceive the Chicago Public Schools.

15. On or about August 22, 2003, at Algonquin, in the Northern District of Illinois,

AIDAN E. MONAHAN and
ROLAND HARPER,

defendants herein, for the purpose of executing the aforesaid scheme, and attempting to do so, did knowingly cause to delivered by mail according to the direction thereon an envelope containing CPS check number 2003298864, payable to Rohar in the amount of $110,390.75, that envelope being addressed to Rohar in Algonquin, Illinois;

In violation of Title 18, United States Code, Sections 1341 and 2.

## FORFEITURE ALLEGATION

The United States Attorney further alleges:

1.  The allegations contained in this Superseding Information are realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.  As a result of their violation of Title 18, United States Code, Section 1341, as alleged in the foregoing Superseding Information,

AIDAN E. MONAHAN and<br>
ROLAND HARPER,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title and interest in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offense.

3.  The interests of the defendants subject to forfeiture pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) include but are not limited to, all profits received by MONAHAN and HARPER from the Chicago Public Schools pursuant to the Sheltered Market Contract, which includes at least $100,000.

4.  If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendants:

    (a)  Cannot be located upon the exercise of due diligence;

    (b)  Has been transferred or sold to, or deposited with,

    a third party;

(c) Has been placed beyond the jurisdiction of the Court;

(d) Has been substantially diminished in value; or

(e) Has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

*Patrick A. Fitzgerald*
UNITED STATES ATTORNEY
by LJ Barcella